## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SAJID ALI KHAN, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>ANWA BIBI, )<br>)<br>Respondent. ) | Case Number:<br><br>1:23-cv-04645-JPB |

## RESPONDENT'S PROPOSED FINDINGS OF FACT AND

## CONCLUSIONS OF LAW

**COMES NOW** ANWA BIBI, Respondent, and pursuant to Federal Rules of Civil Procedure § 52 and Scheduling Order made November 8 2023, submits this, her *Respondent's Proposed Findings of Facts and Conclusions of Law* and shows this Honorable Court the following:

**I.    Respondent's Proposed Findings of Fact**

1.    Petitioner and Respondent were both born in Pakistan.

2.    The parties' mothers are cousins, who planned an arranged marriage for Petitioner and Respondent.  The parties were married in March 2010.

3.    At the time of the marriage, Petitioner resided in the United States with his family.

4. After receiving her permanent residency in 2011, Respondent moved to the United States. Currently, both parties are naturalized US citizens.

5. In 2013, Petitioner and Respondent had their first child. In 2017 and 2021, the parties had two more children. All three children were born in the United States.

6. Initially, the parties resided in North Carolina. Subsequently, they moved to Alpharetta, Georgia.

7. In November 2021, at the demand of Petitioner, the parties moved to Pakistan for a trial period.

8. At the time of the move to Pakistan, the parties were experiencing marital strife. Once in Pakistan, the parties resided with Petitioner's family.

9. Respondent and Petitioner's family did not get along, which exacerbated the current marital strife.

10. Soon thereafter, Respondent left Petitioner's home and returned to her parent's home with the youngest child MK. At the insistence of Petitioner, Respondent was prohibited from taking with her the minor children ZK and SK.

11. By this time, Respondent knew she did not want to stay in Pakistan. Rather, she wanted to return to the United States with all three minor children.

12. In May 2023, without the knowledge or consent of Respondent,

Petitioner returned to the United States with the minor children ZK and SK.

13. Subsequently, Respondent discovered Petitioner was at his brother's home in Alpharetta, Georgia.

14. As the move back to Pakistan was always intended to be on a "trial basis", Respondent reasonably feared Petitioner had decided to return the United States, while leaving her behind in Pakistan. As a result, Respondent immediately traveled with the minor child MK to her brother-in-law's home in Georgia.

15. Once there, it was immediately clear that she was not wanted by either Petitioner or his family. Petitioner's solution was to move Respondent to the home of Imam Asad Khan. At Petitioner's behest, all three children went with Respondent.

16. As it was clear that the marriage was irretrievably broken, Respondent filed for divorce in Fulton County Superior Court on June 23, 2023.

17. Upon being served, Petitioner became irate. As a result of his anger, Respondent and the children were kicked out of the Iman's home and placed into an extended stay hotel, for only a couple of weeks.

18. Apart from paying for the extended stay hotel, Petitioner has not provided Respondent with any sum for the support of the parties' minor children, despite having the means to provide some sort of support. As a result, Respondent

was forced to seek assistance from a women's services non-profit agency.

19. Apart from the brief trial period in Pakistan, the minor children have always resided in the United States. The minor children primarily speak English, and English is the language both parties use when speaking to them.

20. Moreover, the minor children struggle with Penjabi, the language of the rural community of Attok, Pakistan. They have even less fluency with Urdu, the national language of Pakistan. Additionally, the children's struggles with Penjabi and Urdu subject them to bullying by the local children.

II. Respondent's Proposed Conclusions of Law

21. The primary purpose of the Convention is to deter international child abductions and to provide a prompt remedy for the return of an abducted child by ensuring custody rights under one Contracting State are respected in other Contracting States. *Convention, Art. 1.*

22. Thus, for example, if a parent removes a child from the country of the child's habitual residence into a separate country, acting in breach of the other parent's rights of custody, the left-behind parent may commence an action under the Convention by filing a petition for relief in the jurisdiction to which the child was wrongfully removed or retained (the removed-to state). *42 U.S.C. § 11603(b), 42 U.S.C. § 11606. See Section D.1.*

4

23. Thus, the first step in this Court's analysis must be to determine the minor children's habitual residence.

24. Neither the Hague Convention nor the ICARA defines habitual residency. However, "The High Court of Justice in the United Kingdom has explained the lack of a definition this way:

> the notion [of habitual residence is] free from technical rules, which can produce rigidity and inconsistencies as between legal systems. . . . The facts and circumstances of each case should continue to be assessed without resort to presumptions or presuppositions. . . . All that is necessary is that the purpose of living where one does have a sufficient degree of continuity to be properly described as settled."

*Ruiz v. Tenorio*, 392 F.3d 1247, 1252 (11th Cir. 2004).

25. Prior to the move to Pakistan, it is undisputed that the minor children's habitual residence was the United States.

26. To determine habitual residence, "The first step toward acquiring a new habitual residence is forming a settled intention to abandon the one left behind. It is not necessary to have this settled intention at the time of departure, as it could develop during the course of a stay originally intended to be temporary. *Id*. citing *Mozes v. Mozes*, 239 F.3d 1067 at 1075.

27. Moreover, "the relevant 'intention or purpose which has to be taken into

5

account is that of the person or persons entitled to fix the place of the child's residence.'" *Id*. citing *Mozes v. Mozes*, 239 F.3d 1067, 1074 and 1076 (9th Cir. 2001)

28. Sometimes the circumstances surrounding the child's stay are such that, despite the lack of perfect consensus, the court finds the parents to have shared a settled mutual intent that the stay last indefinitely. When this is the case, we can reasonably infer a mutual abandonment of the child's prior habitual residence. Other times, however, circumstances are such that, even though the exact length of the stay was left open to negotiation, the court is able to find no settled mutual intent from which such abandonment can be inferred. Clearly, this is one of those questions of "historical and narrative facts" in which the findings of the district court are entitled to great deference. *Id*. citing *Mozes v. Mozes*, 239 F.3d 1067 at 1077-78.

29. Additionally, "[d]espite the superficial appeal of focusing primarily on the child's contacts in the new country, however, we conclude that, in the absence of settled parental intent, courts should be slow to infer from such contacts that an earlier habitual residence has been abandoned." *Id*. citing *Mozes v. Mozes*, 239 F.3d 1067 at 1079.

30. In Ruiz, the parties moved from the United States to Mexico on a trial basis. The 11th Circuit held that the mother never intended to abandon the United

States as the children's habitual residence.

31. Similarly, in this matter, Respondent never intended to abandon the United States as the children's habitual residence. As a result, Petitioner has failed to prove that the children's prior United States habitual residence had been abandoned and a new habitual residence in Pakistan was established.

32. Even if Petitioner was able to prove a change in the minor children's habitual residence, he must first prove they were wrongfully removed or retained.

33. Children who are wrongfully removed or retained "are to be promptly Returned… " 22 U.S.C. § 9001(a)(4).

34. It is undisputed that there is not a custody order in Pakistan regarding the parties' minor children. Further, under Pakistani law, the parties have co-equal rights to the custody of the minor children.

35. Further, Petitioner brought ZK and SK to the United States. Soon thereafter, Respondent followed with MK. Thus, Petitioner cannot complain that the children were brough to the United States without his consent.

36. Additionally, once here, Petitioner initially placed Respondent and all three children in the home of an Imam and subsequently in an extended stay hotel. Thus, the children are in the custody of Respondent with Petitioner's direction and consent.

37. Moreover, Petitioner's claim that the children have been wrongfully retained is equally without merit.

38. Specifically, Petitioner complains that Respondent refused to provide him visitation and parenting time.

39. However, Petitioner's own exhibits in his Petition show not only was parenting time offered, but also that Petitioner refused to accept the time that was offered. In fact, Petitioner demanded Respondent ignore the Fulton County Superior Court's Standing Order, which prevented the removal of the children from Georgia, and to accept an alternating weekly visitation schedule between Atlanta and Houston, Texas. To Petitioner, anything less is evidence of "wrongful retention."

40. Petitioner's position is wholly without merit. First, the parties were prohibited from removing the children from the state of Georgia. Second, Petitioner, by his own volition, relocated to Houston, Texas and then back to Pakistan. Third, proffering a visitation schedule that would require the children to travel hundreds of miles between Atlanta and Houston is clearly contrary to the minor children's best interests.

41. Finally, even if Petitioner was able to show a wrongful retention, exceptions to the Convention apply. 22 U.S.C. § 9001(a)(4).

42. If Respondent shows (1) by clear and convincing evidence that there is a

grave risk that the return of the children would expose the children to physical or psychological harm, *Hague Convention*, Article 13b; *22 U.S.C. §9003(e)(2)(A)*; (2) by clear and convincing evidence that the return of the child "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms," *Hague Convention*, Article 20; *22 U.S.C. §9003(e)(2)(A)*; (3) by a preponderance of the evidence that the proceeding was commenced more than one year after the abduction and the child has become settled in its new environment, *Hague Convention*, Article 12; *22 U.S.C. §9003(e)(2)(B)*; or (4) by a preponderance of the evidence that Petitioner was not actually exercising his custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention, *Hague Convention*, Article 13a; *22 U.S.C. §9003(e)(2)(B)*.

43. The minor children speak English as their first language. Further, they have limited proficiency in Penjabi and Urdu. As a result, the children would be subjected to bullying and ridicule if returned to Pakistan.

44. Also, Petitioner's action evidenced physical and psychological abuse of Respondent and in the presence of the minor children.

45. Additionally, Petitioner, by his actions, demonstrated he is not concerned with the welfare of the minor children. Rather, he is only concerned with his own

desires. Specifically, he has not provided any sum for their support, and he chose to relocate to Houston, Texas and later back to Pakistan, despite having the means to regularly visit the children in Georgia.

46. Finally, Petitioner voluntarily placed the children in the custody of respondent. Then, relocated to Houston, Texas and later returned to Pakistan. Thus, Petitioner was not actually exercising his custody rights at the time of removal or retention.

47. As a result of the foregoing, Petitioner's Petition must be denied.

                                                Respectfully submitted by,

                                                */s/ Lance W. Gowens*
                                                Lance W. Gowens
                                                Attorney for Respondent
                                                Georgia Bar No. 200425

**THE GOWENS LAW FIRM, LLC**
407 E. Maple Street, Suite 104
Cumming, Georgia 30040
Telephone: (678) 648-7470
E-mail: lance@gowenslaw.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| **SAJID ALI KHAN,** | ) | |
| | ) | **Case Number:** |
| **Petitioner,** | ) | |
| | ) | **1:23-cv-04645-JPB** |
| vs. | ) | |
| | ) | |
| **ANWA BIBI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## **CERTIFICATE OF SERVICE, FONT, AND MARGINS**

I hereby certify that I electronically filed the foregoing *Respondent's Proposed Findings of Facts and Conclusions of Law* with the Clerk of the Court using the CM/ECF System and served a true and correct copy of the same, addressed to all interested parties as follows:

> Monar Amie Ead, Esq.
> 300 Colonial Center Parkway, Suite 100
> Roswell, Georgia 30076
> mimi@meadlegal.com

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

This 15th day of February, 2024.

[Attorney Signature of Following Page]

11

                                        Respectfully submitted by,

                                        */s/ Lance W. Gowens*
                                        Lance W. Gowens
                                        Attorney for Respondent
                                        Georgia Bar No. 200425

**THE GOWENS LAW FIRM, LLC**
407 E. Maple Street, Suite 104
Cumming, Georgia  30040
Telephone:  (678) 648-7470
E-mail:  lance@gowenslaw.com